DECISION.
{¶ 1} Plaintiff-appellant/cross-appellee the state of Ohio appeals the trial court's dismissal of sexual-offender proceedings. And defendant-appellee/crossappellant Roger Gross appeals his conviction for importuning. We affirm the trial court's decision as it relates to Gross's conviction, but reverse and remand as it relates to the sexual-offender hearing.
 {¶ 2} In February 2003, Gross logged into an Internet chat room and began a conversation with an individual who went by the name "Emma13_cincy." The two exchanged pleasantries, then Gross quickly directed the conversation towards discussing getting together to take nude pictures of Emma in the shower. Gross said that he would be "washing [her] down" during the photo session. He noted that there would be no sex, if Emma preferred. The pair continued to communicate by instant messaging over the next few days, and they eventually decided to meet at a restaurant near Kenwood Mall in Hamilton County for their illicit rendezvous. But there would be no pictures and no sex. The only rendezvous that day would be between Gross and the police; Emma was Hamilton County Sheriff's Detective Rick Sweeney, and Gross was arrested when he showed up for the meeting. When he was arrested, Gross had a bag that contained camera and lighting equipment and a girl's bathing-suit outfit.
 {¶ 3} Gross was indicted for two counts of importuning[1] and one count of attempted unlawful sexual conduct with a minor.[2] He waived his right to a jury trial and proceeded to a bench trial. At trial, Gross moved for an acquittal on the attempt charge, and the trial court granted it. But it found Gross guilty of both counts of importuning. The case was then continued for a sexual-offenderclassification hearing and sentencing.
 {¶ 4} Gross moved to dismiss the sexual-offender proceedings. The trial court granted his motion and sentenced him to community control. The state now appeals, assigning as error the trial court's refusal to hold a sexual-offender hearing. And Gross cross-appeals, assigning four errors: (1) and (2) his conviction was against the sufficiency and the manifest weight of the evidence; (3) the trial court should have granted his motion for an acquittal; and (4) the trial court should have dismissed the indictment because the importuning statute is unconstitutional. Only the state's assignment has merit.
 I. Gross's Assignments {¶ 5} Gross's first three assignments deal with the evidence. We therefore address them together.
 {¶ 6} The standard for reviewing sufficiency is whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[3]
A review of the manifest weight of the evidence puts the appellate court in the role of the trier of fact.[4] The court must weigh the evidence and consider the credibility of witnesses to determine whether the trier of fact lost its way in finding the defendant guilty. A new trial should be granted on the weight of the evidence only in exceptional cases.[5]
 {¶ 7} And when reviewing a challenge to the trial court's denial of a Crim.R. 29 motion, an appellate court is required to determine whether reasonable minds could have reached different conclusions as to whether the state had proved each material element of the offense beyond a reasonable doubt.[6]
 {¶ 8} The version of the importuning statute in effect at the time of the offenses provided, "No person shall solicit another by means of a telecommunications device * * * to engage in sexual activity with the offender when the offender is eighteen years of age or older and * * * the other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is [between ages 13 and 16], and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person."[7]
 {¶ 9} The evidence and testimony in this case demonstrated that Gross asked "Emma" if he could take her picture in the shower and wash her down. He specifically stated that he "like[d] the pics and touching." He also said, "[O]h yeah, you would like to touch my body," and asked, "[W]anna be naughty with me emma [sic]?" On another day, he asked if "Emma" still wanted to meet him to take pictures. He talked about her being "daddy's little girl" and later set up the meeting at the restaurant.
 {¶ 10} All of these statements were directed towards "Emma," who was actually Detective Sweeney, a law enforcement officer. During the conversation, Gross asked "Emma" how old she was. The response: "15." According to the date on the presentence-investigation report, Gross was 60 years old at the time of the offenses (but in his conversations with "Emma," he claimed to be 51).
 {¶ 11} Viewing the evidence in the light most favorable to the prosecution, reasonable minds could therefore have found that all the essential elements of importuning were proved beyond a reasonable doubt. And we cannot say that the trier of fact (the trial court) lost its way in finding Gross to be guilty or that it erred in not granting his motion for an acquittal.
 {¶ 12} Gross now argues that it was Detective Sweeney, not him, who did the soliciting and that the activity that he did solicit was not sexual activity. While it is true that Detective Sweeney was the first person to ask about sex, Gross initiated the conversation about nudity, showering, and touching. A review of the conversations, taken as a whole, reveals that Gross solicited sexual activity from "Emma."
 {¶ 13} Gross also claims that there was no "other" person that he solicited because "Emma" was not a real person, so the state failed to establish his guilt. But Gross did solicit a law enforcement officer, an offense specifically covered by the statute. There was no requirement that "Emma" actually exist; the harm was in the asking, and it would be virtually impossible to apprehend offenders like Gross without such a construction of the law.
 {¶ 14} Gross also argues that the state failed to prove beyond a reasonable doubt that he was aware that he was soliciting a law enforcement officer posing as a person between 13 and 16 years old. But we see no such requirement in the statute.
 {¶ 15} We therefore overrule Gross's first, second, and third assignments.
 {¶ 16} Gross's fourth assignment states that his conviction was improper because the statute under which he was convicted is unconstitutional. He claims that former R.C. 2907.07(E)(2) (the statute under which he was prosecuted) violated theFirst Amendment, the Due Process and Equal Protection Clauses of theFourteenth Amendment, and the Commerce Clause of the United States Constitution. But we have already rejected nearly identical claims.[8] And we decline Gross's request to reexamine these issues.
 {¶ 17} We therefore overrule Gross's fourth assignment of error.
 II. An Improper Appeal? {¶ 18} In its sole assignment of error, the state argues that the trial court erred in dismissing the sexual-offender proceedings. The state contends that R.C. Chapter 2950, as amended by S.B. No. 5, applied retrospectively, and that the trial court therefore should have held a hearing. But we need not go that far.
 {¶ 19} We must first determine whether the state is permitted to appeal in this case at all. The state may appeal in a criminal case only when a statute confers express authority to do so.[9]
 {¶ 20} R.C. 2945.67(A) delineates the circumstances under which the state may appeal: "A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which decision grants a motion to dismiss all or any part of an indictment, * * * a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief * * *, and may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case or of the juvenile court in a delinquency case."
 {¶ 21} There are therefore two ways the state can appeal. The first is as a matter of right; the second is by leave of the appellate court.
 {¶ 22} The state appealed under R.C. 2950.09(B)(4). The relevant portion of that section states, "[T]he prosecutor who prosecuted the offender * * * for the sexually oriented offense in question may appeal as a matter of right the court's determination under this division as to whether the offender or delinquent child is, or is not, a sexual predator."
 {¶ 23} Gross argues that the trial court did not make a determination whether Gross was a sexual predator, and that there is no other instance where the statute grants to the state the authority to appeal. He claims that the trial court's decision not to conduct a hearing was therefore not covered by the statute, and that the state could not appeal that decision as a matter of right.
 {¶ 24} But we believe that the trial court's refusal to conduct the hearing did give the state the right to appeal. The trial court noted in its entry granting Gross's motion to dismiss the sexual-offender proceedings that "a violation of 2907.07(E)(2) is not a sexually oriented offense unless it involved a minor child." This amounted to a determination that Gross was not a sexual offender or a sexual predator — the exact situation provided for in the statute. We therefore need not grant the state leave to appeal; R.C. 2950.09(B)(4) permits this appeal as a matter of right.
 III. The Sexual-Offender Hearing {¶ 25} In general, statutes are presumed to apply prospectively unless specifically made retroactive.[10] The parties argue that the issue here is whether R.C. Chapter 2950, as amended by Senate Bill No. 5, effective July 31, 2003, is retroactive. We address this argument briefly, but need not go that far. Irrespective of the retroactivity question, the state is correct that the trial court should have conducted a sexual-offender hearing.
 {¶ 26} Gross argues that giving retroactive effect to S.B. No. 5 would make the statute an ex post facto law and violate his due-process rights. In his appellate brief, Gross cites our decision in State v. Pasqua, where we held, "There is no language in amended R.C 2950.09(F) that provides for retroactive application."[11] Gross uses this language to support the proposition that S.B. No. 5 is prospective only. While Gross is correct that Pasqua declared a portion of R.C. Chapter 2950 to be prospective, our ruling did not apply to the entire chapter.
 {¶ 27} And Pasqua is distinguishable because it involved a trial court's retroactive application of S.B. No. 5 to the time of a petition, not to the time of the crime. The defendant in that case petitioned for reclassification before S.B. No. 5 became effective. But the trial court applied the new S.B. No. 5 standards to the defendant's application. This was error. But it is not analogous to the current case. Gross committed the crimes prior to S.B. No. 5's effective date. But his trial and sentencing occurred after S.B. No. 5 went into effect. Pasqua
does not afford Gross any protection, nor does it even come into play in our disposition of his case.
 {¶ 28} In State v. Cook,[12] the Ohio Supreme Court held that R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the statute, did not violate either the Retroactivity Clause of the Ohio Constitution[13] or the Ex Post Facto Clause of the United States Constitution.[14]
That case dealt with the registration and notification provisions of R.C. Chapter 2950, and it concerned a previous version of the statute. While it is instructive on the legislative intent behind R.C. Chapter 2950, the answer is even simpler than in Cook, and we need not determine whether S.B. No. 5 is retrospective.
 {¶ 29} The only issue here is whether the trial court should have conducted a sexual-offender hearing. The relevant statute at the time stated, "The judge who is to impose sentence on a person who is convicted of or pleads guilty to a sexually oriented offense that is not a registration-exempt sexually oriented offense shall conduct a hearing to determine whether the offender is a sexual predator if * * * [r]egardless of when the sexually oriented offense was committed, the offender is to be sentenced on or after January 1, 1997, for a sexually oriented offense that is not a registration-exempt sexually oriented offense and that is not a sexually violent offense."[15] So as long as Gross was convicted of a sexually oriented offense after January 1997 (he was convicted in 2003), the trial court had to conduct a sexual-offender hearing.
 {¶ 30} Under the version of the statute effective at the time, importuning was a sexually oriented offense.[16] The trial court concluded that Gross was not a sexual offender based on the pre-S.B. No. 5 definition. It based that conclusion on the language of the former statute that defined a sexually oriented offense as an "offense involving a minor," including "a violation of division (D) or (E)" of R.C. 2907.07.[17] And importuning was a violation of R.C. 2907.07(E).
 {¶ 31} So did Gross's crime involve a minor? For the purposes of this appeal, the answer is yes. Interpreting the same language that the trial court relied on here, the Second Appellate District has recently held, "The plain language of R.C. 2950.01
indicates that any violation of R.C. 2907.07(E) is a sexually oriented offense. The legislature did not distinguish between the subsections of R.C. 2907.07(E), i.e., where the victim was an actual minor between the ages of thirteen and fifteen as opposed to a police officer posing as such a minor. The legislature clearly knew how to distinguish between these sections yet chose not to do so. The fact that the legislature indicated that R.C.2950.01(D)(1)(b) applied to `the following offenses involving a minor' does not create the ambiguity asserted by [the offender], considering that the aim of R.C. 2907.07, in its entirety, is to protect minors from solicitation to engage in sexual activity."[18] The harm is in the asking,[19] and whether the person on the other end of the conversation is a minor or an officer posing as one does not affect the outcome. We therefore need not reach the question of whether R.C. Chapter 2950, as amended by S.B. No. 5, applied retrospectively.
 {¶ 32} Because "offenses involving a minor" included a violation of R.C. 2907.07(E)(2), Gross was convicted of a sexually oriented offense. And the trial court should have conducted a sexual-offender hearing.
 {¶ 33} Gross now argues that holding a sexual-offender hearing would be unconstitutional because it would affect his substantial rights — namely, he lives within 1000 feet of a school and would no longer be permitted to live there if he were found to be a sexual offender.[20] He contends that Section1, Article I, of the Ohio Constitution affords him the right to the complete enjoyment of his property. But that is not at issue in the present appeal; all that concerns us now is whether the trial court properly applied the law. Gross's argument is not ripe for consideration in this appeal.
 {¶ 34} We therefore sustain the state's sole assignment of error. We reverse that part of the trial court's decision concerning the sexual-offender proceedings and remand this case for a sexual-offender hearing. But we affirm the trial court's decision as it relates to Gross's conviction.
Judgment affirmed in part and reversed in part, and cause remanded.
Doan, P.J., and Sundermann, J., concur.
[1] R.C. 2907.07(E)(2).
[2] R.C. 2923.02(A).
[3] State v. Hughbanks, 99 Ohio St.3d 365, 2003-Ohio-4121,792 N.E.2d 1081, citing State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492.
[4] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[5] Id., citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[6] See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
[7] Former R.C. 2907.07(E)(2).
[8] See State v. Tarbay, 157 Ohio App.3d 261, 2004-Ohio-2721,810 N.E.2d 979; State v. Anthony, 1st Dist. No. C-030510, 2004-Ohio-3894.
[9] See State ex rel. Leis v. Kraft (1984), 10 Ohio St.3d 34,460 N.E.2d 1372; Section 3(B)(2), Article IV, Ohio Constitution.
[10] See R.C. 1.48.
[11] 157 Ohio App.3d 427, 2004-Ohio-2992, 811 N.E.2d 601.
[12] 83 Ohio St.3d 404, 1998-Ohio-291, 700 N.E.2d 570.
[13] Section 28, Article II, Ohio Constitution.
[14] Section 10, Article I, U.S. Constitution.
[15] Former R.C. 2950.09(B)(1)(a).
[16] See former R.C. 2950.01(D)(1)(b).
[17] Id.
[18] State v. Bolden, 2d Dist. No. 19943, 2004-Ohio-2315, ¶ 73; see, also, State v. Lobo, 12th Dist. No. CA2004-03-063,2004-Ohio-5821.
[19] Id.
[20] See R.C 2950.031.